UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORENZO MORRIS,

        Plaintiff,               CIV. NO. 12-15328

    v.                       HON. TERRENCE G. BERG

CITY OF ALLEN PARK,        HON. R. STEVEN WHALEN
WAYNE ALBRIGHT and
MICHAEL NICHOLLS,

        Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 28)

Plaintiff Lorenzo Morris ("Plaintiff") alleges that his constitutional rights were violated by Defendants City of Allen Park and Police Officers Wayne Albright and Michael Nicholls (collectively "Defendants")[1], when the Defendant officers allegedly used excessive force while escorting Plaintiff to and from a blood-alcohol test during his detention incident to an arrest for driving while intoxicated. Before the Court is Defendants' motion for summary judgment (Dkt. 28). Plaintiff filed a response (Dkt. 30) and Defendants filed a reply (Dkt. 33). The Court heard oral argument on February 3, 2014.

For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. As described more fully below, Plaintiff's claim of excessive force against Defendant Albright may proceed. Thus,

---

[1] Plaintiff also sued Allen Park Police Lieutenant James Soden and Police Officer Steven Samborski, but the claims against these defendants were dismissed by stipulation of the parties (Dkts. 26, 27).

Defendants' motion for summary judgment is **DENIED** as to this claim, with the exception of Plaintiff's claim that he was subjected to overly tight handcuffing – that portion of Plaintiff's claim against Defendant Albright is dismissed. Defendants' motion for summary judgment is **GRANTED** as to all remaining claims, and those claims are **DISMISSED WITH PREJUDICE.**

## I.  BACKGROUND

At the outset, the Court notes that Plaintiff did not follow the Court's practice guidelines in responding to Defendants' motion for summary judgment.  The Court's practice guidelines for motions for summary judgment are available on the Court's website and provide as follows:

> A Rule 56 motion must begin with a "Statement of Material Facts." Such a Statement is to be included as the first section of the Rule 56 Motion. The Statement must consist of separately numbered paragraphs briefly describing the material facts underlying the motion, sufficient to support judgment. Proffered facts must be supported with citations to the pleadings, interrogatories, admissions, depositions, affidavits, or documentary exhibits. Citations should contain page and line references, as appropriate....  The Statement of Material Facts counts against the page limit for the brief. No separate narrative facts section shall be permitted.

> The response to a Rule 56 Motion must begin with a "Counter-statement of Material Facts" stating which facts are admitted and which are contested. The paragraph numbering must correspond to moving party's Statement of Material Facts. If any of the moving party's proffered facts are contested, the non-moving party must explain the basis for the factual disagreement, referencing and citing record evidence.  Any proffered fact in the movant's Statement of Material Facts that is not specifically contested will, for the purpose of the motion, be deemed admitted. In similar form, the counter-statement may also include additional facts, disputed or undisputed, that require a denial of the motion.[2]

---

[2] Available at -- http://www.mied.uscourts.gov/Judges/guidelines/topic.cfm?topic_id=459

Defendants' motion for summary judgment complied with the Court's practice guidelines, and listed 58 "Material Facts" with specific citations to the record. Plaintiff's response brief offered no "Counter-statement" to Defendants' motion with citations to the record. Without such a counter-statement, Plaintiff fails to identify clearly which of Defendants' 58 material facts are subject to dispute.[3] Plaintiff's counsel litigates numerous cases in this Court, and is cautioned to abide by this Court's practice guidelines going forward. The Court nonetheless conducted a very thorough review of the parties' briefs, oral arguments, and exhibits and gleaned the following facts, which are viewed in a light most favorable to the non-moving party, Plaintiff:

Plaintiff's allegations against Defendants arise out of the alleged use of excessive force by Police Officers Albright and Nicholls following Plaintiff's arrest for driving while intoxicated during the early morning hours on Saturday, December 19, 2009 (Dkt. 1). At about 12:30 a.m. on December 19th, Plaintiff, while driving his vehicle, was involved in a single-vehicle accident in the City of Allen Park (Dkt 1, p 3, ¶ 12; Dkt. 28, Ex. A at 13). At approximately 1:38 a.m. on December 19th, Allen Park Police Officer Nicholls was dispatched in his patrol vehicle to the scene of Plaintiff's accident (Dkt. 28, Ex. B at 14). Plaintiff appeared

---

[3] **Error! Main Document Only.***See, e.g., Akines v. Shelby Cnty. Gov't*, 512 F. Supp. 2d 1138, 1147 (W.D. Tenn. 2007) (deeming the defendant's statement of undisputed material facts as having been admitted by the plaintiffs, where the plaintiffs failed to file a counter-statement of material facts, as directed by local rule).

3

intoxicated to Defendant Nicholls, failed several sobriety tests at the scene[4], and was handcuffed and transported to the Allen Park Police Department lockup (Dkt. 28, Ex. B at 20-21).  Throughout his interactions with Defendant Nicholls and Officer Samborski, Plaintiff repeatedly asked, "Why we going through all this? I didn't do anything. I just had an accident" (Dkt. 29, Ex. A at 39; Ex. E at 16; Ex. B at 34).

At the Allen Park Police Department, Plaintiff was twice read his chemical test rights and asked for his consent – first by Officer Samborski and then by the officer in charge, Lieutenant James Soden (Dkt. 28, Ex. B at 29-31; Ex. D at 13, 15). Plaintiff admits that when asked by Lieutenant Soden, to take the test the second time he shook his head "No" and did not explain his reason for refusing the test (Dkt. 28, Ex. A at 49-50).  More specifically, Plaintiff testified that he thought Lieutenant Soden was asking him whether he was a "sovereign," which to Plaintiff meant "dealing with socialists or something like that," when in fact Lieutenant Soden was reading "chemical test rights" and asking Plaintiff whether he would take a "sobriety test" (*Id.*; Dkt. 28, Ex. F at 15).  In any event, it is undisputed that Plaintiff shook his head no when asked whether he would take a breath test at the station.  *Id.*  Defendant Nicholls then requested a search warrant to obtain a sample of Plaintiff's blood to determine its alcohol content, which was authorized by 24th District Court Judge John Courtright at 3:08 a.m. (Dkt. 28, Ex. G, Search Warrant and Affidavit).

---

[4] Shortly after Plaintiff's sobriety tests, Officer Steven Samborski arrived on the scene (Dkt. 28, Ex. B at 21-22).  Neither Officer Samborski nor Defendant Nicholls had a Preliminary Breath Test ("PBT") device in their police vehicles.  *Id.*

Vials of Plaintiff's blood were drawn at the Midwest Health Center in Dearborn, Michigan by Medical Technician Michele Gibson ("Ms. Gibson") at 3:32 and 3:33 a.m. (Dkt. 28, Ex. C at 7, 35). Plaintiff's blood was later determined to contain .19% blood alcohol, which is more than twice the legal limit for intoxication while operating a motor vehicle (Dkt. 28, Ex. H; MCL § 257.625(1)(b)).  In light of the fact that Plaintiff refused to take a breathalyzer test, his driver license was confiscated and destroyed by Allen Park Police.  *Id.*; *see* MCL § 257.625f.  On February 24, 2010, Plaintiff pled guilty to the offense of OWI (i.e., operating a motor vehicle while intoxicated) in violation of MCL § 257.625(1) (Dkt. 28, Ex. A at 98; Ex. I at 3).

All of Plaintiff's claims in this civil action relate to alleged incidents of excessive force by Defendant Albright, which allegedly occurred during the trip to and from the Midwest Health Center, where Plaintiff's blood was drawn.  Plaintiff asserts no claims based on treatment he received from the Allen Park Police Department either prior to or following the trip to the Midwest Health Center (Dkt. 28, Ex. A at 90, 149) and no claims for excessive force by Defendant Nicholls. Plaintiff's only claims against Defendant Nicholls are related to his alleged failure to intervene to prevent Defendant Albright's use of excessive force (Dkt. 28, Ex. A at 95, 140-141, 149).

As to Defendant Albright, Plaintiff alleges that, on the way to the clinic, his handcuffs were fastened too tightly and were not checked or loosened after he complained (Dkt 1, p 3, ¶ 17; Dkt. 28, Ex. A at 53-57).  Plaintiff claims the tightness

of the handcuffs resulted in pain and an abrasion and a scar which has now disappeared (Dkt. 28, Ex. A at 54-59). Defendant Albright testified that Plaintiff never complained about the cuffs being too tight during the drive to the Midwest Health Center (Dkt. 28, Ex. E at 18). Medical Technician Gibson testified that she did not observe any bleeding when she checked Plaintiff's wrists prior to drawing his blood (Dkt. 28, Ex. C at 24-25). The handcuffs were removed shortly after he arrived at the Midwest Health Center (Dkt. 28, Ex. A at 77, 30-31; Ex. B at 45, 46), which was "less than 10 minutes" from the Allen Park Police Station (Dkt. 28, Ex. E at 17)

Plaintiff also claims to have been "dragged" from the station to the patrol vehicle by Defendant Albright (Dkt 1, p 3,¶ 16; Dkt. 28, Ex. A at 73) and then "slammed to the ground and then against the police car." At his deposition, Plaintiff testified that Defendant Albright "pushed his head into the vehicle" (Dkt. 28, Ex. A at 56). Upon their arrival at the Midwest Health Center, after getting out of the vehicle, Plaintiff claims that Defendant Albright suddenly "spun him around," "slamming" him against the patrol vehicle, elbowed him in the neck (Dkt. 28, Ex. A at 62-65, 86-87) and then allegedly took Plaintiff to the ground (Dkt. 28, Ex. A at 66). Then, when Defendant Albright attempted to pick Plaintiff up off the ground, he grabbed Plaintiff by one arm instead of under both arms. *Id.*

For his part, Defendant Albright testified that, when they arrived at the Midwest Health Center, Plaintiff exited the patrol car and "took three or four steps away from the direction that we intended to go" (Dkt. 28, Ex. E at 21). Defendant

6

Albright interpreted this action as "not complying," thus he "gain[ed] control immediately" of Plaintiff by pressing Plaintiff's body against the rear quarter panel of the patrol car (Dkt. 28., Ex. E at 24-26).  Defendant Albright denies slamming Plaintiff's head into the patrol car (Dkt. 28, Ex. E at 24).  Defendant Albright then escorted Plaintiff into the Midwest Health Center and, he claims, the whole time Plaintiff was "pulling away from [him and] trying to walk in the opposite direction" (Dkt. 28, Ex. E at 28).

Before his blood was drawn, Plaintiff became loud and, in an angry tone, demanded that he be shown the warrant and be allowed to use the bathroom (Dkt. 28, Ex. E at 32).  Those requests were denied because the Officers regarded them as stall tactics, because the warrant had already been given to the hospital staff and because they never let prisoners use unsecured hospital bathrooms (Dkt. 28, Ex. A at 32; Ex. B at 49-50, 57).  Defendants Alright and Nicholls and Medical Technician Gibson testified that Plaintiff repeatedly resisted Ms. Gibson's attempts to draw blood by pulling his arm away, attempting to grab the syringe and, finally, by grabbing Ms. Gibson's arm (Dkt. 28, Ex. C at 11, 17-18; Ex. E at 33).  Plaintiff testified that he never grabbed Ms. Gibson's arm or tried to grab the syringe, but instead testified that he reached with his one arm over to the arm that Ms. Gibson was going to draw blood from because he wanted to roll up his sleeve (Dkt. 28, Ex. A at 74-75).

In any event, Defendants Albright and Nicholls interpreted Plaintiff's actions of grabbing or reaching towards Ms. Gibson as attempts to grab the syringe, and so

7

Defendant Albright instructed Plaintiff to stop resisting and warned him that, if he did not comply, he would be restrained.  Defendants claim that Plaintiff continued to resist having his blood drawn by standing up, tensing his arms and clenching his fists at his side (Dkt. 28, Ex. A at 35-36; Ex. B at 57-59' Ex. E at 35).  Defendant Albright interpreted Plaintiff's actions as an "aggressive stance" and "one of the last steps before someone does fight," thus Defendant Albright used a "straight arm bar takedown" to take Plaintiff to the ground (Dkt. 28. Ex. E at 36).  Defendants Albright and Nicholls ultimately handcuffed one of Plaintiff's wrists to the hospital bed (Dkt. 28, Ex. A at 37, 38; Ex. B 56, 60-61; Ex. C at 38).  Ms. Gibson was then able to complete the blood draw, with Defendants Albright and Nicholls grabbing and restraining each of Plaintiff's arms (Dkt. 28, Ex. E at 39).

After the blood draw, Defendants claim that Plaintiff resisted Defendants Albright and Nicholls' verbal instructions and attempts to re-cuff his hands behind his back by again tensing his arms and clenching his fists at his side (Dkt. 28, Ex. E at 39).  Specifically, Defendant Albright testified that Defendant Nicholls uncuffed Plaintiff's hand from the gurney and that Plaintiff stood up and again clinched his fists with one the handcuffs attached to one wrist.  *Id.*  Defendant Albright testified that having a cuff on a free hand is a "very dangerous situation." *Id.*  Defendant Albright then used a takedown procedure and "pain compliance technique" that involved pushing his thumb into a pressure point behind Plaintiff's ear; Defendants Albright and Nicholls were then able to again cuff Plaintiff's hands behind his back (Dkt. 28, Ex. A at 39-41; Ex. B at 58-63; Ex. E at 39-40).  Plaintiff then stated, "This

ain't the end of it ... Y'all gonna hear from my lawyers, I'm gonna sue the hell out of Allen Park" (Dkt. 28, Ex. C at 19-20).

Plaintiff claims that as he exited the clinic, he was again "slammed" against the patrol vehicle by Defendant Albright and again elbowed in the neck (Dkt. 28, Ex. A at 85-86). Defendant Albright testified that he "secured" Plaintiff against the patrol vehicle while Defendant Nicholls opened the door for Plaintiff to enter, as Plaintiff was continuing to "pull[] away" after they exited the Midwest Health Center (Dkt. 28. Ex. B at 64-65). Plaintiff alleges that Defendant Albright was the only one who "got physical" with him (Dkt. 28, Ex. A at 95), and that his claims against Defendant Nicholls are based solely upon Defendant Nicholls failing to intervene to prevent the force allegedly applied by Defendant Albright (Dkt. 28, Ex. A at 140-141, 149). Plaintiff was then driven back to the Allen Park Police Station; he does not allege any further mistreatment after he left the Midwest Health Center (Dkt. 28, Ex. A at 90).

Upon arriving at the station, an inmate medical screening form was completed at 4:04 a.m., which noted that Plaintiff had no obvious pain or bleeding, did not need emergency service and Plaintiff indicated "no" when asked if he had "any other medical problems we should know about" (Dkt. 28, Ex. J). This form further indicated that Plaintiff was at risk for "assaultive behavior," as he "[r]esisted during the blood draw." *Id.* Booking photographs were taken of Plaintiff at 4:10 a.m. and show no visible injuries to Plaintiffs head or face (Dkt. 28, Ex. K).

9

Plaintiff was released from jail later that day and worked his regular shift as a

security guard beginning at 10:00 p.m. on December 19, 2009 (Dkt. 28, Ex. A at 14,

92).

On June 1, 2010, Plaintiff filed a complaint with the Michigan Department of

Civil Rights (Dkt. 28, Ex. L), alleging that:

> On December 19, 2009 my car lost control and hit the wall on the Southfield
> Freeway in the City of Allen Park. Two White officers arrived that the
> accident scene and arrested me for Driving While Intoxicated (DWI). The
> officers never offered a breathalyzer or medical attention.
>
> At the police station one of the officers took me from the holding cell to have
> blood drawn. During that time, one of the arresting officers began to assault
> me to the point of injury. I believe I was assaulted because of my race.

On August 19, 2010, Plaintiff's civil rights complaint was mediated and dismissed

upon the condition that the City of Allen Park would conduct a "thorough, complete

and unbiased" investigation into Plaintiff's detention and arrest and make the

results known to Plaintiff in a "timely manner" (Dkt. 28, Ex. M).

This investigation was conducted by Allen Park Police Lieutenant Jeffrey

Rimer, who reviewed all of the records concerning the incident and conducted

interviews of Plaintiff, Defendant Albright, Defendant Nicholls, Lt. Soden, Officer

Samborski, the dispatcher on duty that evening and Ms. Gibson. Lt. Rimer

concluded that:

> I found Mr. Morris' version of event [sic] to be difficult to believe. His version
> of the events was completely different from anyone else involved in the event.
> He denies being intoxicated to the point of having a skewed memory of the
> events of 12-19-09 even though his blood alcohol level was .19%. He even
> stated that he disputed his blood test results. He denied being read his
> chemical test rights even though Officer Nicholls' report states that he was
> read his chemical test rights twice, by two different officers. He states he was

10

assaulted to the point of injury but refuses to provide any proof of medical treatment for the alleged injuries. He stated that he did not resist or obstruct the police in any fashion even though he actively resisted the blood draw, attempted to pull away from the officers and even grabbed the arm of the medical technician. I believe that Officer Albright and Officer Nicholls followed the use of force policy of the Allen Park Police Department, applying only the minimum amount of force necessary to control a resistive subject (Dkt. 28, Ex. N).

Plaintiff then filed this lawsuit on December 4, 2012 (Dkt. 1).

## II. ANALYSIS

### A. The Standard for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. Proc. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the

11

evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

In the specific context of a § 1983 action, the non-moving party "must demonstrate a genuine issue of material fact as to the following 'two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) [that] the deprivation was caused by a person acting under color of state law.'" *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)). As there is no dispute that Defendants in this case acted under color of state law, this Court's inquiry must focus on whether there was an actionable deprivation of a right secured under the Constitution or the laws of the United States.

### B.  Plaintiff's Excessive Force Claim against Defendant Albright

Count I of Plaintiff's Complaint alleges that Defendants' conduct subjected Plaintiff to excessive force, in violation of the Fourth Amendment (Dkt. 1). Count II is also an excessive force claim, although it is brought under the Fourteenth Amendment (Dkt. 1). Whether the Fourth Amendment or the Fourteenth Amendment applies to Plaintiff's excessive force claim makes a significant difference.[5] The standards of liability for these causes of action vary widely. *See Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001) ("A substantially higher hurdle must be surpassed [i.e. 'shocks the conscience'] to make a showing of excessive force under the Fourteenth Amendment than under the 'objective reasonableness' test of [the Fourth Amendment] ...."). Which amendment applies depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between. *See Gravely v. Madden*, 142 F.3d 345, 348–49 (6th Cir. 1998).

The Sixth Circuit recently held that the Fourth Amendment, rather that the Fourteenth Amendment, should be applied to an "arrestee detained following a warrantless arrest prior to a probable-cause hearing." *Aldini v. Johnson*, 609 F.3d

---

[5]     Section 1983 does not confer substantive rights but merely provides a means to vindicate rights conferred by the Constitution or laws of the United States. "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. *Graham v. Connor*, 490 U.S. 386, 394 (1989). "[T]he two primary sources of constitutional protection against physically abusive governmental conduct" are the Fourth and Eighth Amendments. *Id.* The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that "arise[ ] in the context of an arrest or investigatory stop of a free citizen," *id.*, while the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences. *See Whitley v. Albers*, 475 U.S. 312, 318–322 (1986). When neither the Fourth nor the Eighth Amendment serves to protect citizens, courts have applied the Fourteenth Amendment. *See Lanman v. Hinson*, 529 F.3d 673, 680–81 (6th Cir. 2008).

13

858, 867 (6th Cir. 2010).  Plaintiff falls into this category, thus the Fourth

Amendment should apply to Plaintiff's excessive force claim.  Furthermore,

Defendants' motion for summary judgment concedes that Plaintiff's excessive force

claim should be analyzed under the more lenient (to Plaintiff) Fourth Amendment

standard (Dkt. 28 at 9-10; Dkt. 37 at 5).  Thus, the Court will dismiss Count II of

the Complaint brought under the Fourteenth Amendment, and apply the Fourth

Amendment's "objective reasonableness" standard to Plaintiff's excessive force

claim.

Under the Fourth Amendment, individuals have a right to be free of

excessive force when police make an arrest or seizure. *See Graham v. Conner,* 490

U.S. 386, 394–95 (1989).  This inquiry turns on the objective reasonableness of the

officer's conduct in view of the facts and circumstances facing the officer. *Id.* at 397.

In making this evaluation, courts look at: "[1] the severity of the crime at issue, [2]

whether the suspect poses an immediate threat to the safety of the officers or

others, and [3] whether he is actively resisting arrest or attempting to evade arrest

by flight." *Id.* at 396.

"Under the doctrine of qualified immunity, 'government officials performing

discretionary functions generally are shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *Phillips v.*

*Roane County*, 534 F.3d 531, 538 (6th Cir.2008) (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982)).  Determining whether government officials are entitled to

14

qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred?  Second, was the right clearly established at the time of the violation?" *Id.* at 538–39.  These prongs need not be considered sequentially.  *See Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

The Fourth Amendment prohibits unduly tight handcuffing in the course of an arrest. *See Martin v. Heideman*, 106 F.3d 1308, 1313 (6th Cir. 1997); *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993).  This general principle was "clearly established" under Sixth Circuit case law at the time of Plaintiff's arrest. *See Martin*, 106 F.3d at 1313.  The Fourth Amendment also prohibits unduly tight or excessively forceful handcuffing during the course of a seizure. *See Morrison v. Bd. of Tr. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009).  This right was also "clearly established" for qualified immunity purposes at the time of Plaintiff's arrest.  *Id.* at 401.  In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing.  *See Lyons v. City of Xenia*, 417 F.3d 565, 575–76 (6th Cir. 2005).

Plaintiff cannot satisfy these requirements. Although Plaintiff alleges that he complained that his handcuffs were too tight, Defendant Albright testified that

Plaintiff never complained about tight handcuffs.  The Court, however, must view the evidence in the light most favorable to Plaintiff at the summary judgment stage, and thus finds that Plaintiff satisfies the requirement of complaining that his hands were cuffed too tightly.  However, the record does not support a conclusion that Plaintiff experienced "some physical injury."  The mere fact that Plaintiff claims that he experienced pain is not sufficient to prove a claim for excessive force based on improper handcuffing because the requirement of physical injury is *in additional to* the requirement that the handcuffs caused Plaintiff discomfort.  *See Lyons v. City of Xenia,* 417 F.3d 565, 575-76 (6th Cir. 2005) (bruising and pain not sufficient); *Miller v. Sanilac Cnty.*, 606 F.3d 240, 252 (6th Cir. 2010) (the plaintiff's claim that that tight handcuffs caused him to lose color in his hands for more than a day after the arrest and that plaintiff had a continuing inability to use his hands was properly dismissed where such claim was not supported by the plaintiff's medical records or the intake form the plaintiff completed during his arrest).

Plaintiff's claim of an abrasion does not satisfy the third element of an excessively tight handcuffing claim.  He alleges little in the way of physical injuries caused by the handcuffing, and the record does not contain any evidence that Plaintiff sought medical treatment for injuries to his wrists or hands.  Furthermore, Ms. Gibson – the Medical Technician who drew Plaintiff's blood – testified that she did not see any visible injuries to Plaintiff's wrists or hands immediately after the handcuffs were removed.  Finally, the medical intake form completed when Plaintiff was returned to the jail stated that Plaintiff did not display any "obvious pain or

16

bleeding," that there was "no need for emergency service," and that Plaintiff did not have "any other medical problems" (Dkt. 28, Ex. J). Plaintiff is unable to present any evidence creating genuine issue of fact as to whether he suffered a physical injury. Plaintiff alleges that he experienced pain, but does not testify that he was physically injured. The only evidence in the record pertaining to physical injury is the testimony of the Medical Technician – who testified that there were no visible injuries. Because there is no genuine issue of material fact as to whether the handcuffing caused a physical injury, the evidence simply does not support Plaintiff's claim that Defendant Albright used excessive force in handcuffing him too tightly; thus, Defendants are entitled to summary judgment on this claim.

Whether Defendant Albright applied unconstitutionally excessive force in tackling Plaintiff twice inside Midwest Health Center, using "pain compliance techniques," pinning or slamming him against the patrol car in the parking lot of Midwest Health Center and using a "straight arm bar takedown" of Plaintiff in the exam room turns on what a reasonable officer would have done under similar circumstances. The question is whether the undisputed facts "demonstrate that a hypothetical reasonable officer" would have "known that his actions, under the circumstances, were objectively unreasonable," *Scott v. Clay County*, 205 F.3d 867, 877 (6th Cir. 2000), not whether Defendant Albright used the least intrusive means available. *See Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ("Officers thus need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as

17

reasonable."); *see also, Illinois v. Lafayette*, 462 U.S. 640 (1983) (noting in the Fourth Amendment context that reasonableness of governmental activity does not hinge on existence of a less-intrusive alternative).

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal citation omitted). The Supreme Court has provided three factors for courts to consider in evaluating an excessive force claim: the severity of the crime, whether the suspect posed an immediate threat to the safety of officers or others, and whether the suspect actively resisted arrest or attempted to evade arrest by flight.  *Id*. at 396.

A plaintiff may "allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage." *Morrison v. Bd. of Tr. of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009) (quoting *Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir. 1999)); *see also Holmes v. City of Massillon*, 78 F.3d 1041, 1048 (6th Cir. 1996).  Further, in determining whether there has been a violation of the Fourth Amendment, the Court does not consider the "extent of the injury inflicted" but whether an officer subjects a detainee to "gratuitous violence." *Morrison*, 583 F.3d at 407 (citing *Pigram ex rel. Pigram v. Chaudoin*, 199 Fed. App'x. 509, 513 (6th Cir. 2006)

(denying qualified immunity to an officer who slapped a suspect in the face because he was being unruly and had a "smart-ass mouth," despite the minimal use of force applied and the absence of any resulting injury)). When evaluating the defense of qualified immunity on a motion for summary judgment, the court must adopt the plaintiff's version of the facts. *See Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. 2012).

Viewing the evidence in the light most favorable to Plaintiff, his excessive force claim against Defendant Albright survives summary judgment. In claims of excessive force, courts employ a two-step inquiry to decide whether a defendant is entitled to qualified immunity: "[a] defendant is entitled to qualified immunity on summary judgment unless the evidence, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011) (internal quotation omitted). The Fourth Amendment governs law enforcement investigative seizures and protects individuals from excessive force during these encounters. *See Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir.2006). "[T]he use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law." *Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006) (denying qualified immunity where plaintiff was struck after surrendering to police); *see also, Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006) (finding it objectively unreasonable for an officer to strike and jump on a suspect who was already on the

19

ground and "out of it").  Where a suspect is passive and compliant with police orders, force is unnecessary to accomplish the officer's task, and thus is objectively unreasonable.  *See Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002) (stating that there is "simply no governmental interest in continuing to beat [plaintiff] after he had been neutralized, nor could any reasonable officer have thought there was"). Construing the evidence in the light most favorable to the Plaintiff, the record indicates that, at certain times during Plaintiff's detention, Defendant Albright applied force against Plaintiff when, according to Plaintiff's version of the events, he was not resisting.  The Court is cognizant of the fact that Plaintiff was highly intoxicated and, according to both the Officers and the Medical Technician, was combative.  However, at this stage of the litigation, the Court is required to view the facts in a light most favorable to Plaintiff, and the Court may not engage in weighing the evidence or balancing the credibility of the witnesses.  The record contains two completely different versions of the events.  If the Officers' testimony is correct, Defendant Albright's use of force to restrain Plaintiff and prevent injury to the Medical Technician was not unreasonable.  Rather, the degree of force appears to have been justified under all the surrounding circumstances.  If Plaintiff's version of the events is correct, that he did not resist at any time while being transported, and that he merely reached over toward the Medical Technician in order to help roll up his sleeve rather than to grab at the syringe, then clearly a question of fact is presented as to whether the degree of force used was excessive.

After the Court heard oral argument on Defendants' motion for summary judgment, Defendants brought a recent Sixth Circuit case to the Court's attention – *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 149 (6th Cir. 2014). However, *Sherve* is distinguishable from the case at bar. First, *Shreve* involved an excessive force claim brought under the Fourteenth Amendment's "shocks the conscious" standard, which is a "substantially higher hurdle" than the Fourth Amendment's "objectively reasonable" standard, applicable to this case. In affirming the District Court's granting of qualified immunity to the defendants, the Sixth Circuit noted that the plaintiff faced this "substantially higher hurdle," and observed that the plaintiff did not present evidence that the defendants acted "maliciously and sadistically for the very purpose of causing harm." *Id.* at 138. Here, in a Fourth Amendment challenge, the Plaintiff need only create a material issue of fact as to whether the Officers used an unreasonably excessive degree of force. *Id*. at 133 ("'if the plaintiff was a free person, and the use of force occurred in the course of an arrest or other seizure, then the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard'" quoting, *Lanman v. Hinson*, 529 F.3d 673, 680–81 (6th Cir. 2008)).

Furthermore, there are disputed issues of fact in this case, that were not present in *Shreve*. In *Shreve*, the plaintiff alleged that he was subjected to excessive force in a jail cell by being tased after flailing about and disregarding commands, with handcuffs attached to only one hand. *Id.* at 137. There was a video tape of the melee in the jail cell, showing the plaintiff "thrashing each time the deputies

21

attempted to secure him." *Id*. at 137.  *Shreve* also noted that "the deputies testified that the loose handcuff on [the plaintiff's] left hand could have been used as a weapon." *Id*. at 135.  In this case, Plaintiff testified that he did not resist having his blood drawn (Dkt. 28, Ex. A at 81-84) and did not resist during the walk into and out of the medical clinic; there is no video evidence contradicting this testimony.

The record in *Shreve* also indicated that, later at a hospital, the plaintiff resisted being handcuffed and instead got up, squatted on the bed, muttered and refused the deputy's command to "lay back down." *Id*.  He then lunged at the deputy with his hands raised and asked "Do you want a piece of me?" *Id*.  at 138.  The deputy had "no way of retreating" because of the cramped quarters, and tased the plaintiff.  *Id*.  The defendant deputy's testimony of what happened at the hospital was "uncontested in the record" as "no other depositions or record evidence [spoke] to the incident." *Id*. at 130.   In this case, Plaintiff's version of events, as recounted through his deposition testimony, directly contradicts Defendants' version of events.

In *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011), the plaintiff claimed that an officer used excessive force when the plaintiff was arrested for drunk driving, subjected to a "take-down maneuver" which fractured his ankle, made to walk 7 or 8 steps on his broken ankle, and then dropped so that he "splattered" on the concrete.  An audio recording of the arrest contained no sounds that supported the plaintiff's version of the events, but the Sixth Circuit concluded that the plaintiff's testimony was "not 'blatantly contradicted' by the lack of

22

corroborating sound on the audio recording.  A reasonable jury could believe [the plaintiff's] version of the events."  *Id*. at 869-70.  Consequently, the Sixth Circuit reversed the district court's grant of summary judgment in favor of the defendant officer.

The Court recognizes that the record lacks any corroboration of Plaintiff's version of the events.  The testimony of the Officers, the Medical Technician, and the blood test showing the level of Plaintiff's intoxication all support a conclusion that Plaintiff was unruly and combative and that the degree of force was not excessive.  Nevertheless, as the Sixth Circuit found in the *Coble* case, the jury is the judge of credibility, and a jury's credibility finding in favor of Plaintiff could overcome the weight of the countervailing evidence.  Because the Court cannot conclude that Plaintiff's version of the events is "so utterly discredited by the record that no reasonable jury could believe it," *Coble* at 870, Defendants' motion for summary judgment must be denied as to Plaintiff's excessive force claim against Defendant Albright.

### C. *Plaintiff's Claims Against Officer Nicholls*

As noted earlier, Plaintiffs admits that only Defendant Albright "got physical" with him (Dkt. 28, Ex. A at 95).  His allegations against Defendant Nicholls are that he failed to intervene to prevent Defendant Albright's alleged use of excessive force.  As a general matter, Defendant Nicholls's mere presence during

the altercation, without a showing of some direct responsibility, cannot suffice to subject him to liability.  *See Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013).

Since Defendant Nicholls did not actively participate in any alleged excessive force, there must be a showing that he either supervised Defendant Albright or owed Plaintiff a duty of protection.  *See Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).  To maintain a claim that Defendant Nicholls owed Plaintiff a duty of care, Plaintiff must show that Defendant Nicholls "observed or had reason to know that excessive force would be or was being used" and "had both the opportunity and the means to prevent the harm from occurring."  *Id*.  Plaintiff simply has not met this burden.

Plaintiff has failed to establish that Defendant Nicholls had the "opportunity and means" to intervene to establish a claim against Defendant Nicholls.  That is, Plaintiff failed to demonstrate that the incident lasted long enough for Defendant Nicholls to both perceive what was going on and intercede to stop it.  *See Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996); *see also Kowolonek v. Moore*, 463 F. App'x. 531, 539 (6th Cir. 2012) (finding that the defendant did not have the opportunity to intervene given the rapid sequence); *Ontha v. Rutherford Cnty., Tenn.*, 222 Fed. App'x. 498, 506 (6th Cir. 2007) (finding that six or seven seconds was insufficient time to compel intervention).  Plaintiff has failed to meet his burden to establish any claim against Defendant Nicholls.  As such, Defendant Nicholls is entitled to summary judgment.

24

### D.  Plaintiff's Claims against the City of Allen Park

Plaintiff's Count III asserts a claim against the City of Allen Park for failure to adequately and properly train, supervise, review or discipline its police officers or for permitting customs, practices or policies in violation of § 1983.  To succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the "moving force" behind the deprivation of the plaintiff's rights.  *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 606–07 (6th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  A systematic failure to train police officers adequately is a custom or policy which can lead to municipal liability.  *See Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "The inadequacy of police training only serves as a basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (internal quotation omitted). To establish deliberate indifference, the plaintiff "must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area

was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).

Simply put, Plaintiff has not established facts sufficient to support this claim. Plaintiff argues merely that this claim should survive, since Allen Park did not engage of regular "performance reviews" of its officers.  Plaintiff has not, however, shown any prior instances of unconstitutional conduct on the part of Allen Park officers, nor that Allen Park has ignored a "history of abuse."  As such, Defendants are entitled to summary judgment on this claim.

### E.  Plaintiff's "Gross Negligence" Claim

Finally, Plaintiff's Count IV alleges that Defendants' conduct amounted to "gross negligence," that was the proximate cause of Plaintiff's injuries and which violated Defendants' duty to exercise reasonable care under MCL § 691.1407(2). However, Michigan "has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *VanVorous v. Burmeister*, 262 Mich. App. 467, 483 (2004) (listing cases); *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254 (6th Cir. 2010).  Thus, Plaintiff's gross negligence claim does not state a claim on which relief could be granted.

## III.  CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (Dkt. 28) is **GRANTED IN PART** and **DENIED IN PART.**  Specifically, Defendants' motion is **DENIED** as to Count I (Fourth Amendment) against

Defendant Albright, with the exception of Plaintiff's claim concerning overly tight handcuffs – that portion of Plaintiff's claim is summarily dismissed; Defendants' motion is **GRANTED** as to Count II (Fourteenth Amendment), Count III (*Monell* claim), Count IV (Gross Negligence) and **GRANTED** as to all counts against Defendants Nicholls.  Accordingly, Counts II, III and IV, and all claims against Defendants Nicholls, are hereby **DISMISSED WITH PREJUDICE**.

      **SO ORDERED.**


      s/Terrence G. Berg
      TERRENCE G. BERG
      UNITED STATES DISTRICT JUDGE

Dated:  May 21, 2014


Certificate of Service

      I hereby certify that this Order was electronically submitted on May 21, 2014, using the CM/ECF system, which will send notification to each party.

      s/A. Chubb
      Case Manager